

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 18, 1951

Hon. Dennis Zimmermann　　　　Opinion No. V-1193
County Attorney
Swisher County　　　　　　　　Re: Eligibility to vote in
Tulia, Texas　　　　　　　　　　elections to convert
　　　　　　　　　　　　　　　rural high school dis-
　　　　　　　　　　　　　　　tricts into independent
Dear Sir:　　　　　　　　　　　school districts.

　　　　We refer to your request for an opinion of this
office concerning eligibility to vote in an election to
convert a rural high school district into an independent
school district. S.B. 316, Acts 52nd Leg., R.S. 1951, ch.
42, p. 69, codified in Vernon's Civil Statutes as Art.
2922<u>i</u>(5).

　　　　Article 2922<u>i</u>(5), supra, provides in part as
follows:

　　　　"Section 1. Upon a petition properly
signed by twenty (20), or a majority, of the
legally qualified property taxpaying voters
residing in any rural high school district
in which there is maintained a first-class
high school of twelve (12) grades, offering
sixteen (16) or more credits, the County
Judge of said county shall issue an order
calling for an election to be held not less
than twenty (20) nor more than thirty (30)
days from the date of filing of said peti-
tion, for the purpose of converting the rural
high school district into an independent
school district for school purposes. After
said election is held, the Commissioners Court
shall canvass the returns thereof as in other
similar elections, and if the majority of the
votes cast favor the change from a rural high
school district into an independent school dis-
trict, then said Commissioners Court shall en-
ter its order to that effect and incorporating
said independent school district. . . . There-
upon, such 'independent school district' shall
thereafter be regarded as duly incorporated for
free school purposes only and shall have and is

hereby vested with all the rights, powers and privileges conferred and imposed by the General Laws of this State upon independent school districts.

      " . . .

"Sec. 4.  All bonds issued by and outstanding against any such rural high school district, as a school district, and all obligations, contracts and indebtedness existing against the rural high school district, shall become the obligations and debts of the independent school district at the time of its incorporation; and the said independent school district, after same has been incorporated, shall be held to have assumed the discharge of all such obligations, contracts and indebtedness, and the same shall be enforceable and collectible from, paid off and discharged by, the said independent school district, as if originally created by it as an independent school district; and it shall not be necessary to call an election within and for such district for the purpose of assuming such bonds and other indebtedness. . . ."  (Emphasis added.)

In connection with that law, you ask these questions:

1.  Is the election limited to only qualified property taxpaying voters?

2.  Who is to pay for the expenses of holding the election?

It is observed that Article 2922l(5) provides that the petition invoking power in a county judge to call such an incorporation election must be "properly signed by twenty (20), or a majority, of the legally qualified property taxpaying voters residing in any rural high school district" designated therein.  But the law does not state the qualification of voters who may vote in a called election.  It simply states that "if the majority of votes cast favor the change . . . said Commissioners Court shall enter its order to that effect."

A similar situation is apparent in Article 2742j, V.C.S., as amended.  That law provides for the incorporation of certain common school districts into independent

school districts.  In an opinion of this office concerning qualified voters under Article 2742j, it was held that all persons who are qualified voters and who are residents of a common school district as designated in that law, are entitled to vote in an election held under and for the purpose set out therein, citing Article 2955 on the matter of qualification.  Att'y Gen. Op. V-348 (1947).  Under that holding, qualified voters were not restricted to qualified property taxpaying voters. The similarity between the provisions and wording of Section 1 of Article 2742j and Section 1 of Article 29221(5) is so striking as to make it appear that the latter was patterned after the former.

Unless, therefore, the presence of Section 4 in Article 29221(5), which does not appear in Article 2742j, imposes some restriction on the qualification of voters under Article 29221(5), the holding in Opinion V-348 should control the answer to your first question.

The purpose of Article 29221(5) is singular. It is to provide for the incorporation by election of a rural high school district (classified as common under Article 2922b, V.C.S.) into an independent school district.  The boundaries of the successor district resulting from such an election favoring the conversion will be coterminous with those of the former rural high school district.  The obligations, bonded and other indebtedness, of the original district will become those of the successor district to discharge.  Section 4 so provides.  A school district can no more escape its obligations by incorporation or conversion than it could by dissolution.  Rocky Mount Independent School Dist. v. Jackson, 152 S.W.2d 400 (Tex.Civ.App. 1941, error ref.).

Indeed, Section 6 of Article 2786b, V.C.S. specifically provides as follows:

"In each instance wherein a common school district has been or shall hereafter be converted into an independent school district and in each instance wherein a district of any kind or class has been converted into a district of any kind or class the boundaries of said original district and of said successor district being coterminous, the indebtedness of said original district shall be held and considered and is hereby declared to be the indebtedness of said successor district without the necessity of an

election of any character for the assumption
of such indebtedness, and the duty is hereby
imposed on the governing board of such suc-
cessor district to levy and collect annually
taxes against all of the property in said dis-
trict, sufficient to pay the interest and to
pay or provide a proportionate part of the
principal thereof. . . ." (Emphasis added.)

Thus, Section 4 of Article 2922l(5) merely ex-
presses the law as set forth in Article 2786b with re-
spect to the obligations of a school district converted
without change of boundaries into another type of school
district, and makes it clearly applicable to rural high
school districts converted into independent school dis-
tricts. Section 4 states that all bonds outstanding
against any such rural high school district, as a school
district, shall become the debts of the successor inde-
pendent school district. The underscored phrase consti-
tutes a limitation on the assumption of bonded indebted-
ness under this law, and prohibits the assumption of
outstanding bonded indebtedness of elementary districts
of the rural high school district which had not previous-
ly been assumed by the rural high school district, as
such, under an election as provided in Article 2922h,
V.C.S. It appears that Section 4 of Article 2922l(5) was
carefully and successfully framed to avoid violation of
Section 3a of Article VI, Constitution of Texas. Clear-
ly, it is not the purpose of Section 4 or any part of
Article 2922l(5) to authorize therein an election for the
assumption of bonded or other indebtedness.

Since the avowed intent of Article 2922l(5) is
not to authorize an election for the assumption of a debt,
bonded or otherwise, its sole purpose being to provide an
election for the conversion of a rural high school dis-
trict, it is our opinion that all persons who are quali-
fied voters under Article 2955, V.C.S., and who are resi-
dents of the rural high school district are entitled to
vote in an election held for the purpose set out in Arti-
cle 2922l(5). See also Art. 2954, V.C.S.

With respect to your second submitted question,
Article 2746b, V.C.S., provides in part as follows:

"All expenses incurred in connection
with or incidental to any school district
election in connection with the public school
within such school district shall be paid out

of the available maintenance fund belonging
to such district . . ."

See Att'y Gen. Ops. O-623 (1939), O-4919 (1942), O-7187
(1946).

It may not be amiss to direct the attention of
those rural high school districts which contemplate con-
verting or incorporating into independent school districts
to the case styled Bigfoot Independent School Dist. v.
Genard, 116 S.W.2d 804, affirmed in 133 Tex. 368, 129 S.W.
2d 1213 (1939). It held that where, after a common school
district has voted a maintenance tax, the district was re-
gularly converted into an independent school district, the
independent school district could not impose the mainte-
nance tax without having first obtained the approval of the
property taxpaying voters of the new district, notwithstand-
ing the independent district embraced the identical terri-
tory which formed the common school district. Also see
Pyote Independent School Dist. v. Dyer, 34 S.W.2d 578 (Tex
Comm.App. 1931).

## SUMMARY

All persons who are qualified voters and
who are residents of a rural high school dis-
trict of the designation and description set
out in Senate Bill 316, Acts 52nd Leg., R.S.
1951, ch. 42, p. 69 (Art. 2922l(5), V.C.S.),
are entitled to vote in an election held there-
under for the conversion of such a rural high
school district into an independent school dis-
trict. Arts. 2954, 2955, V.C.S.; Att'y Gen.
Op. V-348 (1947).

Under Article 2746b, V.C.S., the expenses
of such an election shall be paid out of the
available maintenance fund belonging to the
district. Att'y Gen. Ops. O-623 (1939),
O-4919 (1942), O-7187 (1946).

APPROVED:                           Yours very truly,

J. C. Davis, Jr.                      PRICE DANIEL
County Affairs Division               Attorney General

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant                  By

CEO:mw                               Chester E. Ollison
                                        Assistant